IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2003

**STATE OF TENNESSEE v. JOSEPH SCOTT HAYES**

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-501-140     Timothy L. Easter, Judge**

---

**No. M2002-01871-CCA-R3-CD - Filed December 8, 2003**

---

Defendant, Joseph Scott Hayes, was indicted for two counts of aggravated assault, one count of stalking and one count of coercion of a witness. Following a bench trial, Defendant was convicted of two counts of aggravated assault and one count of coercion of a witness. The trial court found the evidence insufficient to sustain a conviction on the charge of stalking. The trial court sentenced Defendant to four years imprisonment on each count of aggravated assault and three years imprisonment for his conviction for coercion of a witness. The trial court ordered Defendant's sentences for aggravated assault to run consecutively, and his sentence for coercion of a witness to run concurrently with his aggravated assault convictions for an effective sentence of eight years. Defendant now appeals challenging the sufficiency of the convicting evidence. Following a review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

John H. Henderson, District Public Defender; Eugene J. Honea, Assistant Public Defender, for the appellant, Joseph Scott Hayes.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katherine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Defendant's former wife, Mary Hanna, testified that she and Defendant were married less than a year when she filed for divorce in April, 2000. Ms. Hanna stated that she was granted an order of protection from Defendant on April 26, 2000. The trial court ordered the order of protection to remain in effect for a period of one year, and during that time, Defendant was enjoined from "abusing, threatening to abuse, or committing any act of violence against [Ms. Hanna],

pursuant to Tennessee Code Annotated section 36-3-606(a)(1)."

Ms. Hanna testified that on November 27, 1999, prior to the issuance of the protective order, Defendant choked her until she lost consciousness and slammed her against the floor. Ms. Hanna sought medical treatment at the Middle Tennessee Medical Center and was diagnosed with a blunt trauma to the back. She was treated with Motrin and Lortab and released. From March, 2000 to March, 2001, Defendant telephoned Ms. Hanna constantly until she had the telephone disconnected. Defendant frequently stood outside her house and often banged on the front door. Ms. Hanna said that Defendant followed her on several occasions. Ms. Hanna's trailer burned down in March, 2000. Ms. Hanna testified that Defendant told her that he had set the fire and apologized. On July 19, 2000, Defendant was convicted of harassment by telephone. Ms. Hanna testified that she did not initiate any contact with Defendant during this year.

Ms. Hanna testified that on March 17, 2001 she was living in Williamson County with her daughter, Jennifer Bratcher, and her infant grandson. Ms. Hanna was in the process of taking out the garbage that morning when Defendant approached her. Defendant pushed her back into the house, hit Ms. Hanna in the mouth, and cut her lip. During the incident, Defendant demanded that Ms. Hanna tell him the names of her sexual partners. Ms. Hanna replied that it was none of Defendant's business. Ms. Hanna testified that she left Defendant alone in her living room while she went upstairs to get her grandson. When she came back downstairs, Defendant grabbed her and began choking her around the neck until Ms. Hanna dropped the baby on the couch. Ms. Hanna said she blacked out, and Defendant was gone when she gained consciousness. Ms. Hanna testified that she was angry and scared during her ordeal because of the extent of Defendant's anger.

The morning after this incident, Ms. Hanna swore out a warrant for Defendant's arrest. Defendant turned himself in to the police on the following Friday and was released on bond in the early morning hours of March 24, 2001. As a condition of Defendant's release, he was enjoined from committing or threatening to commit any offenses against Ms. Hanna. Ms. Hanna testified that she was notified that Defendant was being released around 2:00 a.m., and she was very scared. When Ms. Hanna arrived at work later that morning, a car pulled into the parking lot, and Defendant jumped out of the passenger side. Ms. Hanna testified that Defendant grabbed her arm and told her that the only reason Ms. Hanna was still alive was because Defendant chose for her to be alive. Ms. Hanna ran into the building where she worked.

Ms. Hanna testified that she visited Defendant in the Williamson County Jail following his arrest on March 24 because she wanted to ask Defendant why he was harassing her. Ms. Hanna said that Defendant called her from jail and told her to drop the charges. Defendant threatened Ms. Hanna that he "could get her" even if he was in jail.

Ms. Bratcher testified that she was asleep during the altercation on March 17. She said her mother woke her up and that Ms. Hanna was hysterical and bleeding from a cut on the lip. Ms. Hanna told Ms. Bratcher that Defendant had hit her. Ms. Bratcher said that Defendant was not allowed to come to their home but that he generally showed up two or three times a week. As far

as Ms. Bratcher knew, Ms. Hanna did not initiate any contact with Defendant from March, 2000 to March, 2001.

Tammy Anderson, Ms. Hanna's niece, testified that she worked with Ms. Hanna. One day in March, 2001, Ms. Hanna came to work with bruise marks around her neck and a cut lip. Ms. Hanna was upset and scared on this occasion. Ms. Anderson also testified that she knew Defendant's voice and heard a message on the answering machine at work from Defendant to Ms. Hanna threatening Ms. Hanna that there was "going to be trouble."

Officer Eric Anderson with the Franklin Police Department responded to Ms. Hanna's call on March 24, 2001. Officer Anderson testified that Ms. Hanna was visibly upset and was shaking and crying. He accompanied Ms. Hanna to the police department where she swore out a warrant for Defendant's arrest. Officer Anderson also took out a warrant for Defendant's arrest for violation of the conditions of his bond issued in connection with the March 17 incident. On cross-examination, Officer Anderson said that his police report did not reflect that Defendant touched Ms. Hanna during the altercation.

Willie Hayes, Defendant's uncle, testified that he had not spoken with Ms. Hanna from March, 2000 to March, 2001 and did not see Ms. Hanna with Defendant during this period of time.

Dawn Hayes, Defendant's aunt, testified that Ms. Hanna telephoned and spoke with Defendant several times while Defendant was staying with her. On cross-examination, Ms. Hayes was not able to state with certainty when these calls were made.

Mary Hardemon, Defendant's mother, testified that Ms. Hanna called Defendant several times, mostly on weekends, while Defendant was staying with her after his divorce.

Mary Carter, Defendant's aunt, testified that Defendant also stayed with her at some point during the period from March, 2000 to March, 2001. She said that Defendant and Ms. Hanna visited her one time and seemed friendly with each other. On cross-examination, however, Ms. Carter said that she could not remember exactly when that visit took place, only that Defendant and Ms. Hanna visited some time after Ms. Carter's grandmother died in August, 1999.

Defendant testified that he learned about the protective order in May or June, 2000. He believed, however, that the protective order was no longer in effect because he and Ms. Hanna had started seeing each other again during that year and had resumed a sexual relationship. Defendant said that Ms. Hanna told him "not to worry" about the protective order. Defendant said that he and Ms. Hanna saw each other periodically from March, 2000 to March, 2001, mostly on weekends. Defendant said that they were both seeing other people during this time and that he was "not jealous" of Ms. Hanna. Defendant denied that he was at Ms. Hanna's house on March 17, 2001. Defendant testified that he was sick on March 17 and did not go to work. Although he and Ms. Hanna were supposed to go out for dinner that night, they argued over the telephone, and the date was broken. Defendant learned about the arrest warrant a few days later and voluntarily turned himself in on

Friday. Defendant said that he was released on bond at approximately 4:00 a.m. on March 24. His mother picked him up and Defendant went home. Defendant denied that he followed Ms. Hanna to her place of work and denied leaving a threatening message on her work telephone.

After the conclusion of the testimony, the trial court found Defendant guilty as to all counts except the charge of stalking.

**Sufficiency of the Evidence**

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Defendant's first challenge is not so much an argument as to the sufficiency of the evidence supporting his convictions for aggravated assault as a request that this Court carve out an exception to the definition of aggravated assault contained in Tennessee Code Annotated section 39-13-102(c). Defendant argues that the sole element elevating his attack on Ms. Hanna from assault to aggravated assault was the presence of a protective order enjoining him from having any contact with Ms. Hanna. See Tenn. Code Ann. § 39-13-102(c). Because Ms. Hanna, according to Defendant's testimony, consented to the resumption of intimate relations during the period in which the protective order was in effect, Defendant contends that these circumstances should "vitiate the legal effect of the order of protection and negate the charges of aggravated assault." Ms. Hanna strongly denied at trial that she had initiated personal contact with Defendant after she obtained the protective order. Nonetheless, Defendant cites no authority, and we find none, in support of his position that the legislature intended to exempt assaults or attempted assaults from this provision if the parties had resumed personal relationships while the order of protection was in effect. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

"A person commits aggravated assault who, after having been enjoined or restrained by an order . . . of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual . . . intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to

4

commit an assault against such individual . . . ." Tenn. Code Ann. § 39-13-102(c). An aggravated assault committed in violation of an order of protection is a Class C felony. *Id.* -102(d).

Ms. Hanna testified that Defendant hit her in the mouth and choked her on March 17, 2001. Ms. Bratcher and Ms. Anderson testified that Ms. Hanna had bruises on her neck and a cut on her lip after this incident. Ms. Hanna testified that Defendant grabbed her by the arm and chased her into her workplace on March 24, 2001. Officer Anderson testified that Ms. Hanna was visibly shaken following the incident. The order of protection entered against Defendant at Ms. Hanna's request was in effect from April 26, 2000 to April 26, 2001. Considering the proof in the light most favorable to the State, there is sufficient evidence to find Defendant guilty of aggravated assault beyond a reasonable doubt.

Defendant next argues that the evidence is insufficient to support his conviction for coercion of a witness as defined in Tennessee Code Annotated section 39-16-507.

To support a conviction for coercion of a witness, the State must prove beyond a reasonable doubt that Defendant:

> by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:
>
> > (1) Testify falsely;
> > (2) Withhold any truthful testimony, truthful information, document or thing; or
> > (3) Elude legal process summoning the witness to testify or supply evidence or to be absent from an official proceeding to which the witness has been legally summoned.

Tenn. Code Ann. § 39-16-507. One type of coercion is defined as a threat, however communicated, to commit any offense. Tenn. Code Ann. § 39-11-106(a)(3)(A).

The primary thrust of Defendant's argument is that he threatened or demanded that Ms. Hanna drop the charges against him but did not coerce her to testify untruthfully or withhold truthful information as contemplated by the statute. Defendant argues that his actions do not constitute the offense of which he was convicted. We respectfully disagree.

As Defendant points out, the purpose behind Tennessee Code Annotated section 39-16-507 is to punish persons "who, through coercion, impair the integrity or availability of witnesses who may be called to offer evidence at official proceedings." Tenn. Code Ann. § 39-16-507, Sentencing Commission Comments. Ms. Hanna testified that Defendant called her at work from the jail and told her to drop the charges stemming from the March 24 attack. Ms. Hanna said that Defendant threatened that he "could get her" even if he was in jail. Ms. Hanna was the only witness who could testify as to the March 24 incident. In order to prevent her from testifying, Defendant threatened to

"get" her if she did not drop the charges. This evidence is sufficient to support Defendant's conviction for coercion of a witness.

## CONCLUSION

Following our review of the record in this matter, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE